IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
<u>SOUTHERN DIVISION</u>

| | | |
|---|---|---|
| **NANCY HAWKINS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| vs. | * | CIVIL ACTION NUMBER: |
| | * | 1:05CV540 W |
| **DALE MEDICAL CENTER,** | * | |
| | * | |
| **Defendant.** | * | |

### <u>PLAINTIFF'S BRIEF IN OPPOSITION TO SUMMARY JUDGMENT</u>

COMES NOW the Plaintiff, Nancy Hawkins, a/k/a Nancy Hawkins-Kahn (hereinafter Hawkins) in the above-styled matter, by and through counsel, and hereby submits the following Brief in Opposition to the Defendant's Motion for Summary Judgment. For the reasons and arguments discussed below, the Defendant is not entitled to summary judgment as the Plaintiff has established a prima facie case and there exist numerous factual issues, which are in dispute.

### <u>DISPUTED FACTS</u>

Plaintiff did complain of the computer problems in which she encountered at work with her supervisor, Ms. Fitzgerald[1]. (Hawkins depo., Ex. 1, Pg. 27, Line 8-21, Pg. 28, Line 1-23, Pg. 30, Line 17-23) Hawkins further testified, when she utilized enlarged enhanced type forms, that she enlarged on a copy machine herself to aid her to expedite her work, she was told by Ms. Fitzgerald she could not use those documents as it did not meet the standards required. (Hawkins depo., Ex. 1, Pg 31, Line 1-23, Pg. 32 Line 5-11) Hawkins does not dispute that she had difficulty doing the reports on time and when she

---

[1] Ms. Fitzgerald was formerly known as Ms. Smolinski and may be referred to in deposition testimony as such.

attempted to take measures through the use of proper computer program and to enlarge documents, she was stopped by doing so by Ms. Fitzgerald. (Hawkins Depo., Ex. 1, Pg. 31, Line 1-23, Pg. 32, Line 5). Hawkins testified that she complained daily of her difficulties doing her job. (Hawkins Depo., Ex. 1, Pg. 36, Line 1-6, Pg. 37, Line 4-7).

Plaintiff also disputes, she was rude or short with co-workers, in so much as the testimony of Ms. Fitzgerald, was in fact hearsay. "<u>Some co-workers complained</u> that she talked down to them and that was generally unapproachable and unhelpful." (Defendant's Affidavit of Fitzgerald) Plaintiff contends that that testimony is hearsay and objects to it for purposes of Summary Judgment and at trial.

In Paragraph 12 of the undisputed facts, Fitzgerald by Affidavit, even though not through her testimony by deposition, states that the Plaintiff was asking sensitive questions without taking precautions to protect the Plaintiff's privacy. The irony of that allegation is that the Plaintiff had complained about Fitzgerald discussing plaintiff's evaluation issues with another employee, in which Fitzgerald had to self-report the violation to her employer and supervisor. That was sometime in the same time frame as she issued a negative report on Plaintiff's employment performance, which occurred two days after she had given the Plaintiff "consistently meets standards and compentency," employee evaluation in which none of these deficiencies were mentioned. (Fitzgerald Depo., Ex. 2, Pg. 20, Line 1-19, Pg. 22, Line 4-9, Pg. 23, Line 1-3) (Hawkins Depo. Ex 1, Pg. 67, Line 12-23).

Plaintiff also disputes Paragraph 13 statement of undisputed facts in that it was made clear by the Floyd Affidavit. (Ex. 3) Ms. Floyd testified in her Affidavit that the "Level 1," reports required for discharge could not be completed until the staff knew a

patient was ready to be discharged because of constant medication changes by the physicians that would require redoing of those reports. (Ex. 3)

Plaintiff disputes Paragraph 14 of denfendant's undisputed facts for the same reasons stated above as to Paragraph 13. Testimony in Floyd's Affidavit makes it clear that certain reports could not be completed because of medication changes that would occur. (Ex 3)

Plaintiff did present testimony and evidence by and through her own testimony and through the Barbara J. Floyd Affidavit, that she did in fact request reasonable accommodations by utilizing large print forms to try to speed up her work process, which was delayed because of the difficulty in dealing with the forms and the computer. She also requested certain use of a computer program that would allow her to increase the computer letter size to speed up her use of the computer programs. (Ex. 3) ( Ex 1, Pg. 27, Line 8-21, Pg. 28, Line 1-28, Pg. 29, Line 1-4)

Ms. Floyd testified by Affidavit that she knew personally that Ms. Hawkins used documents with large letters and was personally present when the Plaintiff complained to the supervisor, Sandra Fitzgerald about the use of the computer and difficulty. (Ex. 3) Ms. Floyd also spoke personally with Fitzgerald about purchasing a computer program necessary to assist the Plaintiff in her work. She was told that by Fitzgerald that the hospital, "will not go for that financially." When Ms. Floyd stated, "if you don't ask, they want give it to you." Fitzgerald simply looked at her and said her nickname and laughed at her. (Ex. 3)

It was also very difficult to ascertain "who's on first" in this case in regard to who Plaintiff actually answered too. It is undisputed that Plaintiff answered to Ms. Fitzgerald

throughout most of her employment up through January or February, 2004. At that time, supposedly a change in her supervisor occurred when Ms. Fitzgerald testified that she had to hand Ms. Hawkins over to Ms. Simmons because she could not work with her due to her personal issues. (Ex. 2, Pg. 13, Line 12-19, Pg. 13, Line 9-20, Pg. 16, Line 13-23, Pg. 17, Line 1-20, Pg. 18, Line 5-15.) However, Ms. Floyd's testimony in her Affidavit makes it clear that Ms. Fitzgerald had difficulty managing numerous employees and management was switched to Ms. Simmons in order to try to improve management in the department. (Ex 3). Even so, Ms. Dunn testified that Fitzgerald continued to be overall supervisor of the department, even though her employer was technically different with the Dale County Hospital employment. (Ex 2, Pg. 7, Line 2-15, Ex. 4 Pg. 10 Line 2-15). This appears to be a very unusual dual of management type issue. It is very clear upon the Plaintiff's testimony and evidence that she complained and requested accommodations from Ms. Fitzgerald, which would have increased her productivity and her ability to do her job, all of which were denied by Ms. Fitzgerald, including the use by Plaintiff, on her own initiative, to increasing letter size on her documents in order to try to perform her job. Fitzgerald admits that Hawkins was slow because of her vision problems. (Ex. 2, Pg. 19, 16-21, Ex. 2, Pg. 19, Line 19-23, Pg. 19, Line 1-5, Pg. 19, 1-15).

     Ms. Floyd's testimony is very clear that she believed that Ms. Hawkins' difficulties in employment was clearly evident in her difficulty of being not able to see the computer and forms that was required for her work. (Ex. 3) Moreover, Ms. Floyd testified that she believed that the Plaintiff was terminated because Ms. Simmons became angry at "Level1" reports were not completed. Ms. Floyd further testified that that

problem continued after the Plaintiff left because of the reality of the situation was those reports could not be completed until the nurses and social worker were aware that a discharge was going to occur, because of constant medication changes by physicians. (Ex. 3)

In Paragraph 15, again the Defendant takes the position that the Plaintiff offered no excuse or explanation for failure to complete certain documentations.  However, again looking at Ms. Hawkins deposition testimony and the Floyd Affidavit, it is apparent that the difficulty in completing documentation was directly related the vision problems for which Ms. Simmons would not accommodate the Plaintiff and denied Plaintiff requested such assistance.  (Ex.3) ( Ex. 1, Pg. 32, Line 1-11, Line 16-21, Pg. 32, Line 1, Pg. 34, Line 8-23, Pg. 36, Line 1-6, Pg. 37, Line 4-7) ( Ex. 2, Pg. 18, Line 5-18, Pg. 19, Line 19-23, Line 1-5, Pg. 19, Line 11-15, Pg. 16-21) (Ex. 5, Pg. 21, Line 20-22, Pg. 22, Line 8-14, Pg. 23, Line 3-12)

In Paragraph 16, again as in Paragraph 15 above Plaintiff contends that the work complaints were directly related to the Defendant's failure to accommodate difficulty in reading and utilizing computer forms in the printed forms of the employer.

In Paragraph 17, Plaintiff contends that she did not receive a list of "social worker action plan," deficiencies at the time of her evaluation, and in fact, received "consistently meets standards and competency" evaluation two days before she ever saw that list, which made no notations of any of these alleged deficiency areas. ( Ex 1. Pg. 56, Line 5-19, Pg. 57, Line 2-23,  Pg. 58, Line 1-15, Pg. 67, Line 12-23, Ex. 7, Ex. 8)  Ms. Fitzgerald's testimony, wherein she saw shortfalls and those shortfalls were rated such as 4 out of 5, or 7 out of 10 in a particular category.   The evaluation of Plaintiff, which

clearly indicated acceptable standard at the time of that evaluation and inconsistent with the deficiency provided two (2) days after her evaluation. (Ex. 2, Pg. 23, Line 1-3, Pg. 23, Line 16-20, Pg. 24, Line 4-13 Ex. 7, Ex. 8)

In Paragraphs 18, 19, and 20, again Plaintiff already had previously asked for accommodations and complained about the problem and gotten no results or satisfaction from those requested accommodations from the employer. (Ex. 1, Pg. 27, Line 8-21, Pg. 28, Line 1-23, Pg. 29, Line 1-4, Line 16-23, Pg. 30, Line 1-6, Line 17-23, Pg. 31, Line 1-23, Pg. 32, Line 1-11, Line 16-21, Pg. 34, Line 8-23, Pg. 36, Line 1-6, Pg. 37, Line 4-11) (Ex. 3).

In response to Paragraph 21, it was testified about in the Floyd Affidavit, Plaintiff was unable to complete reports because of the medication changes by physicians and the difficulty that continued even after Ms. Hawkins's employment ended. (Ex. 3)

In Paragraph 22, again as in Paragraph 21 above, Plaintiff contends by testimony of Ms. Floyd that the Plaintiff was unable to complete reports due to medication changes by the physicians and that the difficulty continued even after Ms. Hawkins's employment. (Ex. 3).

In response to Paragraph 23, Plaintiff had complained about difficulties with computers and the forms and attempted to resolve those on her own, which were denied by Ms. Fitzgerald. Plaintiff simply could not physically maintain the required paperwork. Barbara Hamilton did testify that there were comments made about Plaintiff's vision by employers and co-employees regarding both Ms. Hawkins's age and vision in the workplace. (Ex. 6, Pg. 13, Line 2-3, Pg. 16, Line 3-16, Line 6-16).

In fact, Fitzgerald asked the Plaintiff in her interview about her vision problem, in which the Plaintiff responded she wouldn't know until she started working, what help she might need. (Ex. 2, Pg. 31, Line 2-21, Ex 1, Pg. 15, Line 10-17).

## ARGUMENT

Summary Judgment is appropriate only when the court is satisfied that "there is no genuine issue as to any material fact in that the moving party is entitled to the judgment as a matter of law." Fed. R. Civ. P. (56)(c).

An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. **Anderson v. Liberty Lobby, Inc.,** 477 US. 242, 248 (1986).

A fact is "material" if it may affect the outcome of the suit under the governing law. (Id.) The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits, which it believes demonstrate the absence of a genuine issue material fact. **Celotox Corp.,v. Catrett**, 477 U.S. 317, 323 (1986), Cert denied, 484 U.S. 1066 (1988); **Hixon Corp. v. Northern Cresson Co., Inc.,** 357 F. 3d, Pg. 1256, 1259-60 (11th Cir.2004). To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with evidence, ie., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party case, and the elements in which that part would bear the burden of proof at trial motion. **Celotox v. Catrett**, 477 U.S. at 322; **Hilburn v. Murata Elecs. N.A. Inc.,** 181 F.3d. 1220, 1225 (11th Cir. 1999). In ruling on a motion for

7

summary judgment, if there is a conflict in the evidence, the non-moving party evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. **Shotz v. City of Plantation FL,** 344 F.3d 1161, 1164 (11th Cir. 2003). As cited in **Walker v. Sugar Corporation**, 2005 WL 1459400 (M.D Fla 2005). The **Walker** case goes on to explain that an ADA case can be construed under the same framework as set out by the U.S. Supreme Court in the McDonald Douglas Corporation standard. Within that framework, the Plaintiff bears the initial burden of establishing the prima facie case of discrimination in which the Defendant asserted that Plaintiff is not qualified. Defendant can argue that the Plaintiff was not qualified because she did not meet the "long tenure" significant enough remove the inference that she was qualified for her position. However, Defendant ignored the fact that the Plaintiff passed a 90-day evaluation for probationary period, survived her first year of employment with an evaluation, that unexplainably listed her as "consistently meets standard and competency" and a score of 80 out of a possible 100. (Ex. 2, Pg. 19, Line 16-21, Pg. 20, Line 1-19, Pg. 23, Line 1-3 Ex. 7).

Two days before she received a laundry list of deficiencies, most of which were related to her inability to complete reports on time.(Ex 8) The problem with that factually is the Plaintiff has testified in this case as supported by the Floyd Affidavit that she in fact had difficulty with the documentations and computers available to her at the workplace.(Ex 3,Ex1 Pg 27 Line 8-21, Pg. 28 Line 1-23, Pg.30Line 17-23) Furthermore, she had requested from her supervisor and the department manager, Ms. Fitzgerald, accommodations through proper computer programs and/or the use of enlarged letter

documents, and in the fact she try to do this on her own initiative, but was instructed not to use her own created forms. (Ex.1,Pg.31Line1-23,Pg.32Line5-11)

Obviously, it is a disputed fact to the point that Ms. Fitzgerald testified those conversations did not occur, but both the Plaintiff and Ms. Floyd testified that they did.(Ex 3,Ex.1Pg.31Line1-23,Pg.32Line5) In order for the Plaintiff to establish a prima facie case, she must show she is "(1) disabled; (2) was a qualified individual at the relevant time; and (3) was subject to unlawful discrimination because of her disability. **Lucus v. WW Grainger, Inc.,** 257 F.3d 1249, 1255 (11th Cirr. 2001); **Cash v. Smith**, 231 F.3d 1301,1305 (11th Cirr.2000). By establishing a prima facie case, the Plaintiff creates a refutable presumption at that the challenged action was motivated by discriminatory intent. **Equal Employment Opportunity Comm v. Joes Stone Crubs, Inc.,** 296 F.3d 1265, 1272 (11th Cir. 2002), Cert denied, 539 U.S. 941 (2003)." 2005 WL 1459400 (m.d. fla.2005) in the McDonald Douglas established that the burden had shifted and the Defendant to produce non-discriminatory reasons of its action.

The Defendant argues the Plaintiff was not qualified, Plaintiff disputes that from the fact that she is properly educated and licensed and holds a Masters Degree from the University of Alabama in social work. A current Alabama license does make her qualified.(Ex.1Pg.43Line2-5,19-20) The Defendant next argues that the Defendant can articulate a non-discriminatory reason for termination. It is clearly evident by all the testimony and evidence in this case almost all complaints regarding the Plaintiff's work performance generally circulated around her inability to complete reporting on time.

Again, Plaintiff contends that the disputed testimony in this case is that she requested accommodations through, proper computers, computer programs, and the use

of enlarged documents to expedite her work in order to keep up. However, though denied by Ms. Fitzgerald, disputed as well by the Floyd affidavit that Ms. Floyd was aware of Plaintiff's attempt to use larger form documents, and further that Ms. Floyd personally spoke with Fitzgerald about a computer program, available to the Defendant, to assist the Plaintiff in her work duties.(Ex. 3)  On that basis, the Plaintiff is going to contend that she was not reasonably accommodated even though she requested accommodations.

**In Walker v. U.S. Sugar Corporation**, the Court stated "the court concludes that there are multiple issues of disputed material facts which precludes summary judgment. For instance, the parties dispute: (1) the job description and essential job functions of a sugar boiler; (2) whether Walker requested or identified any accommodation(s), prior to termination; (3) whether Walker asserted that he could perform his job as required; (4) whether at the time of Walker's termination, U.S. Sugar informed him he could reapply without loss of seniority, if, within two (2) years of termination, his medical restrictions were lifted: (5) whether Walker was told he could not return to U.S. Sugar property without an attorney or police escort.  Whether the Plaintiff failed to mitigate is not an issue, which would justify summary judgment."at 3  Even though that is an unpublished opinion that is attached hereto to this Brief, Plaintiff contends that the factual circumstances in that case are very similar to the issues here, and should persuasive in denying the Defendant's summary judgment.

Lastly, the Defendant argues that the reason for termination were not pretextual in nature.  Plaintiff would respond two ways.  First as stated above, the previous argument, that almost all complaints and reasons for termination in this case related to

paperwork issues and failure to complete reports in a timely fashion. Plaintiff then contends that the facts and evidence in this case, even though disputed, are that she was not provided sufficient accommodations in order to do her job in a timely fashion. She complained early on and requested accommodations, which were denied. Furthermore, even though Ms. Fitzgerald testified that she handed management of the Plaintiff off to Ms. Simmons, testimony was clear that Ms. Fitzgerald remained as department head, and ultimate authority in that department as evidenced by her own testimony.(Ex.5 Pg.17Line2-9,12-18,Ex.2 Pg13Line12-19,Pg.18Line5-18)

Furthermore, based on testimony and evidence, Ms. Fitzgerald was at all times aware as well as Ms. Simmons, that the Plaintiff had difficulties in utilizing the forms and documents and utilizing the computer because of her visual limitations. The fact that most all work performance issues complained about were related to her inability to have reports completed on time. (Ex.2Pg18Line 5-18, Pg.19Line16-21, Ex.5Pg22Line1-2,8-14)

In regards to the pretext argument, this district states a plaintiff must offer evidence that demonstrates, "such weaknesses, implausibility's, inconsistencies, incoherencies, or contradictions in the employers proper legitimate reasons for its actions that a reasonable fact finder could find documents to articulated reasons {unworthy of Credence}" Id at 1333, quoting **Combs v. Plantation Patterns,** 106 F.3d 1519, 1538 (11th Cir. 1997); See also **Farley v. Nationwide Mutual Ins. Co.** 197 F.3d 1332, 1333 (11th Cir. 1999). Applying framework to ADA claims as cited inn **Alpert v. Decob Office Environments, Inc.** 206 F.3d. 1280 (2001) at 1287-88. Plaintiff contends that the fact she passed her 90-day evaluation for her probationary period and came off of

probation and then got an "consistently meets standards and competency" evaluation on January 9th of 2004, subsequently, one or two days later she received a laundry list of alleged deficiencies and this mysterious transfer of management from Ms. Fitzgerald to Ms. Simmons, even though Plaintiff asserts the evidence and testimony indicated Ms. Fitzgerald continued to be the department head and ultimate authority, all fits in what is described **Alpert** case, where the jury could reasonable find this is "impossibilities, inconsistencies, incoherencies and contradictions" in the Defendants offered testimony for the reasons of termination.

## CONCLUSION

Plaintiff believes that she has presented more than sufficient evidence that she is clearly a disabled person, which is not disputed to any extent by the Defendant. Her disability caused her difficulties in doing her job, she requested an attempted on her own to accommodate those disabilities to assist her in improving her work performance, which were thwarted by the Defendant, and that without a doubt the Defendant failed to accommodate her disability and the failure to accommodate lead to work deficiencies that lead to her termination.

Plaintiff avers that there is more than sufficient evidence and facts that a jury would find a favor in this case.

**WHEREFORE,** the Defendant's Motion for Summary Judgment is due to be denied.

HALL, SMITH, PRIM & FREEMAN, P.A.

                                BANKS T. SMITH (SMI 101)
                                Attorney for Plaintiff
                                P.O. Box 1748
                                Dothan, AL 36302-1748
                                334-793-3610
                                FAX 334-671-1843

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on the following counsel of record by placing the same in the United States Mail, properly addressed and first class postage prepaid:

Albert L. Vreeland, II
Lehr, Middlebrooks, Price & Vreeland, P.C.
P.O. Box 11945
Birmingham, Alabama 35202-1945

This the 14 day of April, 2006

                                OF COUNSEL