IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **NANCY HAWKINS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NUMBER:** |
| **v.** ) | **1:05cv540 W** |
| ) | |
| **DALE MEDICAL CENTER,** ) | |
| ) | |
| **Defendant.** ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT**

Dale Medical Center replies as follows to Plaintiff's Opposition to Summary Judgment.

**Introduction**

In opposing summary judgment, Plaintiff has not shown that her disability was the cause of her performance problems or that she required an accommodation. Although she now claims that she had some "difficulty" reading and filling out forms, she testified that she was able to use the computer and fill in forms by using a magnifying glass and that she could adequately complete psychosocial reports (a critical function of her job which failed to perform). She admits that she never offered her vision as an excuse for her performance problems and that she never told anyone (including her new supervisor) that she needed any form of accommodation to timely complete her necessary paperwork.

More importantly, Plaintiff does not argue that her vision problems were related to any of the other (non-paperwork) reasons for her termination, including her failure to get along with the other staff members, conduct the necessary discharge planning, coordinate with patients' families, and conduct therapy sessions with patients and their

families. As she has not even attempted to rebut these legitimate, non-discriminatory reasons for her termination, she has failed demonstrate pretext as a matter of law.

**Defendant's Response To Plaintiff's Statement Of "Disputed Facts"**

Defendant responds as follows to both the numbered and unnumbered portions of Plaintiff's Statement of "Disputed Facts." The unnumbered factual contentions on pages 1-2 of Plaintiff's brief are addressed below in paragraphs 18 and 23.

13. The "Level 1" reports mentioned in the Floyd affidavit are different than the Zung and GDS assessments which Plaintiff failed to perform. Floyd testified that Level 1 reports are reports that must be done prior to a patient's discharge to a nursing home (Plaintiff's Evid. Submission, PX 3, Floyd Aff., pgs. 1-2), while Plaintiff testified that Zung and GDS assessments are part of the admission assessment. (Plaintiff 51:4-51:11.[1]) Thus, Floyd's assertions regarding the "Level 1" reports are irrelevant to Defendant's assertions that Plaintiff failed to conduct Zung or GDS assessments.

14. Similarly, the "Level 1" reports mentioned in the Floyd affidavit are irrelevant to Defendant's allegations concerning Plaintiff's failure to conduct discharge planning. Plaintiff was required to begin discharge planning shortly after a patient was admitted, including coordinating the logistics with the patient's family and support agencies and arranging for the patient to be transferred to a state hospital or a group home. (Simmons Aff., ¶7; Fitzgerald Aff., ¶¶5, 8; Plaintiff 22:02-22:11.) Plaintiff's failure to conduct this discharge planning had nothing to do with her ability or inability to conduct the "Level 1" reports mentioned in the Floyd affidavit. (*Id*.; s*ee also* Plaintiff 36:3-36:6 (stating that if she asked for help, other staff members would oblige her).)

---

[1] Unless otherwise noted, evidentiary citations are to Defendant's Evidentiary Submission.

(The remainder of Plaintiff's unnumbered factual contentions following her "dispute" about Fact no. 14 is addressed below in paragraph 23.)

15-16. Plaintiff's assertion that she had difficulty completing the psychosocial assessments because of her vision problems is not supported by the record. Plaintiff admitted that she was able to adequately complete psychosocial assessments by using a notebook with the questions in enlarged type to collect the information and then using her magnifying glass to write the information on the proper form. (Plaintiff 18:7-18:10, 34:8-35:8.)

17. Although Plaintiff did not receive the document entitled "Social Worker Action Plan" until a day or two after Plaintiff and Fitzgerald[2] discussed Plaintiff's performance evaluation, the issues listed in that document were verbally discussed in that same meeting. (Fitzgerald 22:1-24:13; Plaintiff 55:10-59:22; DX10.)

18-20. Although Plaintiff now contends that she had asked to use larger font forms and to use a computer program with larger font, she never claimed that her vision problems were the reason for her failure to complete documentation. (See paragraph 23 below, and evidence cited therein.) It is undisputed that Plaintiff never suggested her vision was the cause of her inability to get along with other staff members,[3] her

---

[2] Fitzgerald was formerly known as Sandra Smolinski.
[3] Plaintiff incorrectly argues that the evidence concerning Plaintiff's failure to get along with co-workers is hearsay. Fitzgerald and Simmons both testified that they personally observed Plaintiff being abrupt, short and rude with co-workers. (Fitzgerald Aff., ¶9; Simmons Aff., ¶8.) Fitzgerald also observed Plaintiff being curt and brusque with patients. (Fitzgerald Aff., ¶9.) Fitzgerald and Simmons' testimony that they received complaints about Plaintiff from co-workers is also not hearsay because it is not offered to prove the truth of the matter asserted. (See Fed. R. Evid. 801(c).) Whether these complaints by co-workers were accurate is not the issue — the only relevant inquiry is whether Defendant's decision to terminate Plaintiff's employment was based on its managers' good-faith belief as to the truth of these complaints. *Elrod v. Sears, Roebuck*

3

failure to begin discharge planning upon a patient's arrival, her failure to coordinate with patients' families, or her failure to conduct therapy sessions with patients and their families. (Plaintiff 37:16-37:18, 60:05-60:13, 62:21-64:02, 64:11-64:13; DX 20; DX 12; Simmons Aff., ¶10.)  Rather than ask for any form of accommodation, Plaintiff committed to correct all these performance deficiencies. (Plaintiff 60:5-60:13, 64:03-64:10; DX 10; DX 12.).[4]

  21-22. The "Level 1" reports mentioned in the Floyd affidavit were unrelated to the reports Plaintiff failed to complete which were discussed in Defendant's Statement of Facts No. 21 and 22.  The "Level 1" reports discussed in the Floyd affidavit were reports completed at the time of a patient's discharge. (Floyd Aff., pgs. 1-2.)  The performance deficiencies discussed in Defendant's Statement of Facts No. 21 and 22 involved Plaintiff's failure to complete treatment plans, reports of her therapy sessions, and documentation of discharge planning (which is to begin upon a patient's admission). (Simmons Aff., ¶¶9-10; DX 12.)  There is no evidence in the record that Plaintiff was unable to complete the reports discussed in Defendant's Statement of Fact No. 21 and 22 because of medication changes by the doctors. *Id*.

---

*& Co*., 939 F.2d 1466, 1470 (11th Cir.1991) ("our inquiry is limited to whether the employer gave an honest explanation of its behavior."); *see also* Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997) (The appropriate inquiry "centers upon the employer's beliefs, and not the employee's own perceptions of his performance. Thus, where the employer produces performance reviews and other documentary evidence of misconduct and insubordination that demonstrate poor performance, an employee's assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence.")(internal citations omitted).

[4] Plaintiff admits that her failure to timely complete paperwork at two other jobs (before and after Defendant) was not related to her vision. (Plaintiff 72:9-72:22, 81:2-83:2; DX 14.)

23. Plaintiff never told anyone that her failure to timely complete the required paperwork was caused by her vision problems. (Plaintiff 35:9-36:9, 37:4-38:1, 54:5-55:5, 60:5-60:13, 63:1-64:13, 66:22-67:5; Simmons Aff., ¶9, Fitzgerald Aff., ¶10.) To the contrary, when Plaintiff received Action Plans to correct her performance deficiencies on two separate occasions, she committed to correct the problems on both occasions and <u>never</u> once protested that she needed accommodations in order to do so. (*Id.*)

Indeed, Plaintiff admitted she was able to read and complete forms by using a magnifying glass (Plaintiff 26:9-26:21, 31:8-32:4), she was able to read the computer screen by using a magnifying glass (Plaintiff 29:21-30:6), she could adequately complete the psychosocial reports by hand (Plaintiff 18:7-18:10, 34:8-35:8), and she used the computer only for typing letters and completing some progress notes (Plaintiff 30:7-30:17). Moreover, many of Plaintiff's performance problems were clearly unrelated to her vision, such as her failure to get along with other staff members, her failure to begin discharge planning upon a patient's arrival, her failure to coordinate with patients' families, and her failure to conduct therapy sessions with patients and their families. (DX 10; DX 12; Simmons Aff., ¶10.)

Although Plaintiff now claims that she previously asked Ms. Smolinski if she could use enlarged forms or have a computer program to enlarge the type on her computer because it caused her some "difficulty," she has not submitted any admissible evidence to support the contention that she needed such an accommodation in order to adequately complete the required documentation.[5] Rather, Plaintiff merely submits

---

[5] The only evidence Plaintiff submitted on this point is a lay opinion from Ms. Barbara

evidence that it was "sometimes awkward" for her to write and that she may have written a "little slower" than some people. (Plaintiff 67:20-67:23; Fitzgerald 19:6-19:15.) Further, Plaintiff never contended during her employment that her vision prevented her from timely completing her job duties; she never reported any problem or complaint to Jennifer Simmons, who was her supervisor at the time of her second Action Plan and who made the decision to terminate her employment. (Plaintiff 37:4-38:1.)

Finally, the evidence cited by Plaintiff does not support Plaintiff's implication that there were any discriminatory or harassing comments regarding Plaintiff's vision or age in the workplace. Rather, she admits that she never heard any mean-spirited or negative comments, and the record is devoid of any evidence that any negative comments ever occurred even outside of her presence. (Plaintiff 38:2-39:10.)

## Argument

**1. Plaintiff Has Abandoned Her Age Discrimination Claim.**

Plaintiff offers no argument or evidence in support of her claim for age discrimination. Accordingly, that claim is deemed abandoned. *See, e.g., Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned).

**2. Plaintiff Cannot Establish A Case of Disability Discrimination.**

The Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., "places the burden on the employee to establish a prima facie case of disability discrimination." *Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000). "A *prima*

---

Todd-Floyd, which is due to be stricken. See Defendant's Motion to Strike, filed contemporaneously herewith.

*facie* case of employment discrimination under the ADA is established by demonstrating that Plaintiff[]: (1) ha[s] a disability; (2) [is] qualified, with or without reasonable accommodations; and (3) w[as] unlawfully discriminated against because of [her] disability." *Rossbach v. City of Miami*, 371 F.3d 1354, 1356-57 (11th Cir. 2004) (citing 42 U.S.C. § 12112(a)). See also *Davis,* 205 F.3d at 1305; 42 U.S.C. § 12132. Plaintiff's claim fails because she cannot establish the second or third elements of her prima facie case.

    a.    **<u>Plaintiff Is Not Qualified.</u>**

To prove the second element of a *prima facie* case, Plaintiff must demonstrate that she was an "otherwise qualified individual with a disability." 42 U.S.C. 12112(b)(5) (providing that the ADA prohibits denying employment opportunities or failure to make reasonable accommodations to an employee who is an "otherwise qualified individual with a disability"); *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). A qualified individual with a disability is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. §12111(8). To the extent an individual cannot perform the essential functions of the job even with reasonable accommodation, he or she cannot claim to be a qualified individual under the ADA. *Earl v. Mervyns, Inc.*, 207 F.3d 1361 (11th Cir. 2000).

Plaintiff was not qualified for the job, even if the Medical Center had provided the computer program and enlarged forms she now contends she needed, because Plaintiff never satisfactorily performed the other job duties which were unrelated to her ability to complete paperwork, including getting along with the other staff members, conducting the necessary discharge planning, coordinating with patients' families, and conducting

therapy sessions with patients and their families.  (Fitzgerald 22:1-24:13; Plaintiff 55:10-59:22, 62:02-62:13; DX 10; DX 12; Simmons Aff., ¶¶9-10.)

Although Plaintiff contends that she "survived" her 90-day performance evaluation and her first year of employment, mere survival does not prove that she was qualified.  The record demonstrates that Plaintiff never performed her job satisfactorily and that the problems with her performance were addressed throughout her employment.  (Simmons Aff., para 6 and ex. A thereto at p. D00023 (August 2003 reprimand regarding overdue reports); Plaintiff 52:18-53:10, DX 8 (September 2003 reprimand for delinquent psychosocial assessments); Plaintiff 54:12-54:20, DX 9 (October 2003 reprimand regarding more delinquent psychosocial assessments); Simmons Aff., para 7 and ex. B thereto at p. D00133 - 00147 (January 2004 memo regarding Plaintiff's failure to complete therapy sessions in 2003 and 2004); Plaintiff 55:15-56:11, 59:08-59:22, DX 10 (January 2004 Social Worker Action Plan identifying performance deficiencies); Plaintiff 62:02-62:13, DX 12, Simmons Aff., para 9 (April 2004 action plan identifying performance deficiencies); Plaintiff 65:23-66:18, Simmons Aff., para 10 (May 2004 termination for failure to improve performance problems).)  This evidence of repeated failure to meet performance expectations where the plaintiff has not been employed a great length of time is sufficient to show that an employee is not qualified to do the job.  *Baker v. Sears, Roebuck & Co.*, 903 F.2d 1515, 1520-1521 (11th Cir. 1990); *Aldabblan v. Festive Pizza*, 380 F. Supp. 2d 1345, 1352 (S.D. Fla. 2005). *See also Damon v. Fleming Supermarkets of Florida*, 196 F.3d 1354, 1360 (11th Cir. 1999).

### b.     <u>Plaintiff Cannot Establish That Her Termination Was Caused By Her Disability.</u>

To establish the third element of a prima facie case, Plaintiff must show that the Medical Center terminated her employment because of her disability. *Cash*, 231 F.3d at 1305 (11th Cir. 2000). Although Plaintiff now contends that her problems completing documentation were related to her vision, she has failed to offer any admissible evidence that her repeated failure to timely complete necessary documentation was caused by her vision problems.

Plaintiff admitted she was able to read and complete forms by using a magnifying glass (Plaintiff 26:9-26:21, 31:8-32:4), she was able to read the computer screen by using a magnifying glass (Plaintiff 29:21-30:6), and she could adequately complete the psychosocial reports by hand (Plaintiff 18:7-18:10, 34:8-35:8). Although she now claims that she encountered some "difficulty" in completing necessary paperwork without the use of enlarged font on pre-printed forms and the computer, she offers no evidence as to the extent of this difficulty. Rather, Plainiff merely submits evidence that it was "sometimes awkward" for her to write and that she may have written a "little slower" than some people. (Plaintiff 67:20-67:23; Fitzgerald 19:6-19:15.)

Plaintiff never told her supervisor that she needed such assistance in order to timely complete her paperwork. (Plaintiff 35:9-36:9, 37:4-38:1, 54:5-55:5, 60:5-60:13, 63:1-64:13, 66:22-67:5; Fitzgerald Aff., ¶10.) Rather, when she received Action Plans to correct her performance deficiencies, she committed to correct the problems and <u>never</u> protested that she needed accommodations in order to do so. (*Id*.) She never reported <u>any</u> problem or complaint to Jennifer Simmons, who was her supervisor at the time of her second Action Plan and at the time of her termination. (Plaintiff 37:4-38:1.)

9

Notably, Plaintiff was disciplined by two other employers for failing to timely complete paperwork, and admits that her performance problems in those jobs were completely unrelated to her vision. (Plaintiff 72:9-72:22, 81:2-83:2; DX 14.)

### c. **Plaintiff Cannot Show Pretext**

More importantly, Plaintiff does not (and could not) blame her other performance problems on her vision. Once a defendant has articulated several reasons for an employment action, a plaintiff must demonstrate that **each** of the proffered reasons is unworthy of credence in order to establish pretext. *Chapman v. AI Transport,* 229 F.3d 1012, 1024-1025 (11th Cir. 2000). *See also Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 and 1539-42 (11th Cir. 1997) (holding employer was entitled to judgment as a matter of law where employee rebutted only two of three legitimate non-discriminatory reasons proffered by the employer for the adverse employment action).[6] Otherwise, the employer is entitled to summary judgment. *Chapman*, 229 F.3d at 1024-25.

Although Plaintiff argues that her vision problems caused her failure to timely complete necessary documentation, she offers no evidence that her vision problems were related to the Medical Center's other reasons for terminating her employment, such as her failure to get along with the other staff members, conduct the necessary discharge planning, coordinate with patients' families, and conduct therapy sessions with patients and their families. (DX 10; DX 12; Simmons Aff., ¶10.) As Plaintiff has not even attempted to rebut each of Dale Medical Center's proffered non-discriminatory reasons for her termination, she has not satisfied her burden to demonstrate pretext.

---

[6] ADA disparate treatment cases apply the same *McDonnell Douglas* burden-shifting framework as Title VII cases. *See, e.g., Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1333 (11th Cir. 1999)(applying framework to ADA claim).

**Conclusion**

As Plaintiff has failed to show that she was a qualified individual, that her vision problems caused her performance problems or that each of the reasons for her termination were pretextual, Defendant is entitled to summary judgment as a matter of law.

Respectfully Submitted,

s/Albert L. Vreeland, II
Albert L. Vreeland, II ASB-0066-V78A

LEHR MIDDLEBROOKS & VREELAND, P.C.
P.O. Box 11945
Birmingham, Alabama 35202-1945
(205) 326-3002

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 25, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

      Banks T. Smith, Esq.
      Hall, Smith, Prim & Freeman, P.A.
      P. O. Box 1748
      Dothan, Alabama 36302

      Respectfully submitted,

      s/Albert L. Vreeland, II
      Albert L. Vreeland, II ASB-0066-V78A
      Lehr Middlebrooks Price & Vreeland, P.C.
      P.O. Box 11945
      Birmingham, AL 35202-1945
      Phone: (205) 326-3002
      Fax: (205) 326-3008
      E-mail: avreeland@lmpv.com
      Bar No.: ASB-0066-V78A

152257